# Johnson *v.* The State.

*Disbarment Proceedings.*

(Decided July 2, 1907.		44 South. 671.)

1. *Attorneys; Disbarment Proceedings; Security for Costs.*—In a disbarment proceeding security for cost can be required only upon the motion of the solicitor prosecuting the cause under the provisions of General Acts 1903, p. 346.

2. *Appeal; Error; Waiver.*—Errors assigned not insisted on in brief or oral argument of appellant's counsel, are deemed to be waived and will be so treated.

3. *Same; Insistence.*—The mere recital of assignments of error not supported by argument or by cited authorities is not such an insistence as requires consideration of such assignment.

4. *Attorney; Misconduct.*—Under the provisions of section 587, and 596, Code 1896, the letter in this case written by the defendant and delivered to the judge, referring as it evidently does to the judge in his official capacity constitute grounds for disbarment.

APPEAL from Shelby Circuit Court.

Heard before Hon. A. H. ALSTON.

Proceedings by the Alabama State Bar Association for the disbarment of Wiley T. Johnson, a licensed practicing attorney. From a judgment of disbarment, Johnson appeals. Affirmed.

It was based upon an affidavit, signed by W. B. Brown, by Borden H. Burr, the solicitor of the Seventh judicial circuit. The charges grew out of the letter addressed to Judge John Pelham at Anniston, Ala., with full postage and register charges paid. The letter is in the following language: "Helena, Ala., Jan. 1, 1906. Hon. John Pelham, Anniston, Ala.—Sir: In company yesterday with E. S. Carey, on my way to Birmingham, the said Mr. Carey tells me that while he was in jail and in the nighttime, you called on him and expressed your sorrow for him, and that you acted in the way you did towards him much on account of your dislike for me. It is useless for me to tell you my contempt for any man that is small enough to do such an act and then admit it. In the future I want you to act the gentleman (in court) towards me, and on the outside of court you will have to do it, or I will know why. I was born and raised in Shelby county, and am willing to go on my record to the grave for my fair open dealing with and to my fellow-man. I can have no patience or respect for a circuit judge who will so far forget his oath of office as to meet (at night), and during the trial of E. S. Carey, with the solicitor and the county solicitor, and feast on partridges, and discuss how and why a certain man should be tried. I am due you nothing, but you owe me apology or denial of Mr. Carely's imputation. Make one or both, or else I shall feel it my duty to denounce you in the county papers as a poltroon, liar, and cur. Wiley T. Johnson." The issues of fact submitted to the jury were found in favor of the state and against the defend-

[Johnson v. The State.]

ant, and a judgment of disbarment followed; and from this judgment this appeal is prosecuted.

SAM WILL JOHN, for appellant.—The letter shows on its face that it was not about any matter before the judge and that Johnson was not guilty of contempt.—4 Cyc. 908; *Neel v. The State*, 9 Ark. 259; 50 Am. Dec. 207; 4 Blacks. Com. p. 285; Secs. 590-595-596, Code 1896; *Jackson v. The State*, 21 Tex. 668; *People v. Green*, 7 Colo. 237; 49 Am. Rep. 351.

ALEXANDER M. GARBER, Attorney General, BORDEN H. BURR, Solicitor, CECIL BROWNE, and C. C. WHITSON, for appellee.—Only the solicitor could require security for cost.—General Acts 1903, p. 346. Every court has the inherent right and power to strike an attorney from its roll without reference to the general statutory authority to disbar.—4 Cyc. 905; 3 A. & E. Ency. of Law, 300. Information against an attorney at law may be amended at any time.—*Thomas v. The State*, 58 Ala. 365. The letter was clearly within the terms of the statute and constituted grounds for disbarment.—4 Cyc. 908; 3 A. & E. Ency. of Law, 306; *Bradley v. Fisher*, 13 Wall. 646; *People v. Greene*, 49 Am. Rep. 351; *State v. Root*, 57 Am. St. Rep. 582; *Withers v. The State*, 36 Ala. 252.

DENSON, J.—This is a disbarment proceeding, prosecuted in the name of the state of Alabama against Wiley T. Johnson. The proceeding was instituted by the solicitor of the Seventh judicial circuit, on a written statement signed by the chairman of the Central Council of the Alabama State Bar Association, attested by the secretary of the Association, and accompanied by the written affidavit of W. B. Browne, making charges for the suspension or removal of said Wiley T. Johnson as

an attorney at law, and setting forth facts upon which such suspension or removal should be based. This is in accordance with the provisions of the act, amendatory of certain sections of the Code, relating to disbarment proceedings, approved October 3, 1903.—Gen. Acts 1903, p. 346. Under the act the duty devolves on the solicitor to prosecute all disbarment proceedings, and in the seventh section of the act it is provided that "the court may, upon the motion of said solicitor, and upon good cause shown, at any time require the said Alabama State Bar Association to give security for the costs of such proceedings to be approved by the court within ten days from notice to the secretary of said Association, by said solicitor," etc. Obviously, from the very language of this section, it is only on motion of the solicitor that security for costs may be required, and the court properly overruled the motion made by the defendant to require security for costs to be given.

After the motion to require security for costs to be given, and the motion to dismiss the cause because no security for costs was filed at the time the accusation was filed, were overruled, a plea pendente lite was filed, and a demurrer thereto was sustained. The action of the court in sustaining the demurrer to the plea constitutes a ground in the assignment of errors. Unless an assignment of error is insisted upon in the brief of the appellant's counsel, no duty devolves on this court to consider the assignment, and it will be treated as waived. In respect to the assignment of error presenting the ruling of the court on the demurrer to the plea pendente lite, appellant's counsel in his brief simply recites the facts that the plea was filed, the substance of the plea, that there was a demurrer, and that the demurrer was sustained. No argument is presented nor authority cited in support of the assignment of error. Mere recital

of what is shown by the record cannot be considered as an insistence on the assignment, and we shall, in keeping with our decisions in respect to failure to insist on an assignment of error, pretermit consideration of the merits of the assignment in question.—*Western Railway of Ala. v. Russell,* 144 Ala. 143, 39 South. 311, and authorities there cited; *Sacrbrough v. Borders,* 115 Ala. 436, 22 South. 180.    The same is true in respect to all the other grounds of error presenting for review rulings of the court on the pleadings.

The appellant suffers no injury from the foregoing conclusion, because the merits of the case are clearly presented by the record, and the point most insisted upon in the argument at the bar, and on which the guilt or innocence of the defendant must be determined, remained in the case after the several rulings were made, and would have remained if the several rulings (except that on the plea pendente lite) had been in defendant's favor, instead of against him.    That point or question is:   Does the writing and mailing of the letter by the defendant, an attorney at law, to Hon. John Pelham, then judge of the Seventh judicial circuit, and which was received by the judge in the due course of mail, at his home in Anniston, Ala., while he was not engaged in holding court, constitute sufficient ground for the suspension or removal of the defendant as an attorney at law?   And it may be added that no proof was offered on any of the grounds of the accusation ,other than those which relate to the letter.   Section 596 of the Code of 1896 provides that an attorney at law may be removed or suspended "for a willful violation of any of the provisions of section 590" of the Code.   Section 590 provides that: "It is the duty of attorneys:   *   *   *   (2) To maintain the respect due to courts of justice and

7 R

[Johnson v. The State.]

judicial officers." Again, the oath of every attorney requires that he shall not violate any of the duties enjoined on him by law.—Code 1896, § 587. The statute does not prescribe or define what acts or what conduct on the part of an attorney shall constitute disrespect to judicial officers; but it is clear to our minds, from the words of the statute, that neither the obligations of an attorney nor the terms of the statute are complied with by the mere observance of the rule of courteous demeanor in open court—that they certainly include abstaining while out of court from the use of insulting language, written or spoken, and from offensive conduct towards judges personally for their judicial acts.

On the face of the letter here involved, it is perfectly clear that it relates to a judicial act of Judge Pelham. The clause in the letter reading, "In future I want you to act the gentleman (in court) towards me, and on the outside of court you will have it to do, or I will know why," manifestly refers to the demeanor of the judge while occupying the bench—while acting in his judicial capacity—towards the defendant; and the only reasonable construction that can be placed on the clause is that the writer meant that the judge's judicial conduct did not square with rightness of principle or practice. Furthermore, the following language in the letter: "I can have no patience nor respect for a circuit judge who will so far forget his oath of office as to meet (at night) and during the trial of E. S. Carey, with the solicitor and the county solicitor, and feast on partridges, and discuss how and why a certain man should be tried"—can refer to nothing other than the conduct of Judge Pelham as a judicial officer. Certainly it shows that it was the conduct or reported conduct of the judge in respect to a cause that had been tried in court which had aroused the ire and indignation (?) of the defendant. Indeed,

the whole tenor of the letter shows that the judge was being called to task by the defendant on account of the judge's deportment in the courthouse in respect to a certain cause or causes he had tried wherein the defendant was one of the attorneys. This is further demonstrated, if more proof be necessary, by the reference in the letter to forgetfulness by the judge of his judicial oath; for as a man—as an individual—his conduct was not gauged or controlled by any oath. So, without further elaboration, we unhesitatingly announce the conclusion that, taking the letter as a whole, it refers to the judicial conduct of the judge.

The Constitution and the statute law of the state provide for the impeachment of a judge whose conduct has disqualified him from holding the office to which he has been elected, and it is the duty of every attorney or other citizen, who has knowledge of any act which would jus-tify impeachment, to present the facts to the proper tribunal, in order that proper and orderly action may be taken, when the charges can be duly investigated and the officer afforded an opportunity to be heard in defense; and if defendant had any foundation (which it seems he had not) for the charges he made in the letter against Judge Pelham he should have resorted· to the mode pointed out by the law for making them. He did not do this, but unquestionably allowed his feelings—it may be his malicious feelings—to lead him into writing the letter here under consideration. The method adopted by the defendant—the sending of that letter—was eminently improper and inconsistent with the relation which should subsist between members of the bar and judicial officers charged with the duty of administering justice. Not only that, but who doubts the tendency of such a letter to injure the reputation of courts and of judges for probity and impartiality, and to destroy pub-

lic confidence in the judiciary (than which nothing could be more deplorable)? "A judge cannot, with propriety, defend himself against attacks made by members of the bar, made through the press or by letters, because to do so would be not only to bring the judge in public contempt and disrepute, but would be to depart from all the wise traditions of the bench." Moreover, as suggested in the brief of appellee's counsel, the writer of the letter here under consideration gives no opportunity to Judge Pelham to deny the imputation made against him. The writer assumes the truth of the statement of Carey in the outset, and denounces the judge in the most unqualified terms. If the judge had, in reply, written a denial of Carey's statement, it would have placed him in the attitude of making such denial and explanation under fear of denunciation in the public press as a poltroon, liar, and cur. If members of the bar are to be permitted to impugn the integrity and impartiality of the bench without just cause, whether during court session or in vacation, it may be asked, how long will the laymen, who assume that attorneys are in position to know the facts in such cases, retain that confidence in the bench so essential to its usefulness?

It must be borne in mind that this is not a contempt proceeding, but a proceeding for the disbarment of an attorney; and the distinction between the two is well marked and defined. An attorney may be guilty of conduct which would warrant his disbarment, but which would not amount to a contempt of court.—Weeks on Attorneys, § 80. The cases cited and relied on by appellant's counsel are, in the main, cases involving contempt proceedings. In the case of *Jackson v. State*, 21 Tex. 668, it is only held that applying opprobious and abusive epithets to the judge in vacation cannot be considered a contempt. In respect to this case, Judge Freeman, in

[Montgomery Traction Co. v. Whatley.]

his notes to the case of *In re Philbrook*, 45 Am. St. Rep. 59, 86, says: "This case is an extreme one, and, perhaps, cannot be approved, unless on the ground that the language complained of was used during an exciting political contest." Having determined that the letter relates to judicial conduct or judicial acts of the judge we unhesitatingly conclude that in sending the letter to Judge Pelham the defendant willfully failed to maintain the respect due to him as a judicial officer, and thereby breached his oath as an attorney. Further, we are of opinion that the letter is of such a nature as to demand a disbarment of the defendant, and we therefore affirm the judgment of the court below.

Affirmed.

TYSON, C. J., and HARALSON and SIMPSON, JJ., concur.